UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jackson National Life Insurance Company, <br><br> Plaintiff, <br><br> -v- <br><br> Maria Saccone *et al.*, <br><br> Defendants. | 2:23-cv-06138 <br> (NJC) (LGD) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, District Judge:

On August 15, 2023, Plaintiff Jackson National Life Insurance Company ("Jackson") filed a Complaint in Interpleader under Federal Rule of Civil Procedure 22 against Defendants Maria Saccone ("Maria") and Peter Saccone ("Peter") seeking a judicial determination regarding the proper beneficiaries of the death benefit payable in connection with an annuity contract owned by Thomas J. Saccone ("Thomas")—Maria's husband and Peter's father—now deceased. (Compl., ECF No. 1.) Before the Court is Jackson's unopposed Motion for Leave to Deposit Annuity Proceeds with the Court, for Discharge from Liability, and Dismissal ("Motion"). (Mot., ECF No. 16; Mem., ECF No. 17.) For the following reasons, the Court grants the Motion in part and denies it in part.

**BACKGROUND**

The following facts are taken from Jackson's Amended Complaint. (Am. Compl., ECF No. 5.) On April 26, 2022, Jackson issued Thomas an IRA annuity contract. (*Id.* ¶ 9.) Thomas designated Maria as the contract's sole primary beneficiary. (*See id.* ¶ 10.) On or around April

12, 2023, Jackson received an online request to change the contract's beneficiary so that Maria and Peter were primary beneficiaries in equal shares and so that Peter was the sole contingent beneficiary. (*Id.* ¶ 11.) On or around April 13, 2023, the phone number associated with the contract was changed. (*Id.* ¶ 12.) Thomas's online account was registered using Peter's email address and telephone number. (*Id.* ¶ 13.) On April 23, 2023, Thomas passed away. (*Id.* ¶ 14.)

On or around May 9, 2023, Peter submitted to Jackson a Death Benefit Claim Form to claim 50% of the contract proceeds. (*Id.* ¶ 15.) Jackson paid Peter $1,504.35 in contract proceeds. (*Id.* ¶ 23.) On or around June 8, 2023, Jackson sent a letter stating that an "unknown individual registered a web account associated with the deceased's contract in 03/2023 . . . [using] telephone number 631-871-0993." (*Id.* ¶ 17.) On or around June 15, 2023, Maria submitted to Jackson a Death Benefit Claim Form to claim 100% of the proceeds. (*Id.* ¶ 16.)

In response to Jackson's June 8, 2023 letter, Peter wrote to Jackson stating that Thomas "was hacked while he was in the hospital . . . getting diagnosed with pancreatic cancer" and that "TIAA," another financial institution, "told us somebody tried to withdraw $25,000. They not only hacked into my dad's cell phone but also used his home phone for the two step method authorization." (*Id.* ¶ 18.) Peter stated that "we chose to change his email and to no longer use his cell phone and no longer use the home landline." (*Id.*)

On or around June 20, 2023, Jackson wrote to Peter stating that the online beneficiary change naming him as a primary beneficiary was "'not in good order' and therefore is not effective . . . because the online account used your telephone number and email address when registering . . . [and] an owner must use his or her own e-mail address to register an online account and make a beneficiary change." (*Id.* ¶ 19.) Jackson informed Peter that he had "been

2

removed as a beneficiary and the previously recorded beneficiary designation is restored." (*Id.* ¶ 19.)

Maria and Peter have not reached an agreement as to how the contract proceeds should be distributed. (*Id.* ¶ 22.) Maria alleges that she is entitled to all of the proceeds because the contract application named her as the primary beneficiary receiving 100% of the contract proceeds and because she does not believe that Thomas consented to the April 12, 2023 beneficiary change. (*Id.* ¶ 20.) Peter alleges that he is entitled to 50% of the proceeds because he believes that the April 12, 2023 beneficiary change was Thomas's wish. (*Id.* ¶ 21.)

## PROCEDURAL HISTORY

On August 15, 2023, Jackson filed its Complaint in Interpleader against Maria and Peter. (Compl., ECF No. 1.) On August 17, 2023, Jackson filed an Amended Complaint in Interpleader. (Am. Compl., ECF No. 7.) On November 6, 2023, Maria filed an Answer and Crossclaim against Peter, and Peter filed an Answer and a Crossclaim against Maria and a Counterclaim against Jackson. (ECF Nos. 11, 12.)

On November 27, 2023, Jackson requested a pre-motion conference in anticipation of filing a motion to dismiss Peter's counterclaim. (ECF No. 13.) On December 5, 2023, Peter filed a letter indicating that he withdrew his counterclaim. (ECF No. 14.) On December 11, 2023, Jackson moved to withdraw its request for a pre-motion conference. (ECF No. 15). The Court granted the motion to withdraw and denied the request as moot on December 14, 2023. (Elec. Order, Dec. 14, 2023.)

On January 4, 2024, Jackson filed the instant Motion seeking an order that: (1) directs Jackson to deposit the proceeds of Thomas's annuity contract with the Clerk of this Court; (2)

discharges Jackson from liability; (3) dismisses Jackson with prejudice; and (4) orders the party or parties to whom funds are disbursed to notify Jackson of the amount of the disbursement and provide Jackson with a completed Form W-9 through Jackson's counsel of record in this matter, for tax reporting purposes. (ECF Nos. 16–18.)

## JURISDICTION

Rule 22 allows a stakeholder to interplead multiple defendants "when their claims are such that the plaintiff is or may be exposed to double or multiple liability." Fed. R. Civ. P. 22(a)(1). The rule requires an independent basis for subject matter jurisdiction: either upon federal question or diversity of citizenship, as provided in 28 U.S.C. §§ 1331, 1332. *See* Fed. R. Civ. P. R. 22; *Correspondent Servs. Corp. v. First Equities Corp. of Florida.*, 338 F.3d 119, 124 (2d Cir. 2003); *see also Sec. & Exch. Comm'n v. Blakstad*, No. 20CV163 (DLC), 2020 WL 7398755, at *3 (S.D.N.Y. Dec. 17, 2020).

This Court has subject matter jurisdiction over this Rule 22 interpleader action pursuant to 28 U.S.C. § 1332. Diversity jurisdiction in the Rule 22 context "requires that the plaintiff . . . be of diverse citizenship to all defendants, and that the amount in controversy be greater than $75,000[,]" *Correspondent Servs. Corp.*, 338 F.3d at 124, but "there need not be diversity between the claimants themselves," *Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*, 368 F. Supp. 3d 460, 475 (E.D.N.Y. 2019). Here, the parties satisfy the requirements for diversity jurisdiction because Jackson, a citizen of California and Michigan, is diverse from both Defendants—Maria and Peter Saccone—who are citizens of New York (*see* Am. Compl. ¶¶ 1– 3), and the value of the annuity contract is approximately $208,000 (*see* Mem. at 1).

The Court has personal jurisdiction over Defendants. The Complaint alleges that both Defendants are New York residents (Am. Compl. ¶¶ 1–3), and both Defendants were located in New York when personally served with the summons and Complaint. (*See* ECF Nos. 6, 7.) This Court has personal jurisdiction over New York residents. *See* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 1064 (4th Ed. 2020) (describing defendants' residence in the forum state as one of the oldest bases of personal jurisdiction); *cf. Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (a court may assert personal jurisdiction over foreign defendants "when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.") (quotation marks and citation omitted). Additionally, Defendants were personally served, which is proper service under Rule 4(e)(2)(A), Fed. R. Civ. P. (ECF Nos. 6, 7.)

Venue is proper under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965 because Defendants reside in this judicial district. (*See* Am. Compl. ¶¶ 2–3.)

**DISCUSSION**

Rule 22 provides that a plaintiff may bring an action joining defendants with "claims that may expose [the] plaintiff to double or multiple liability" even though "the claims of the several claimants . . . are adverse and independent rather than identical" or "the plaintiff denies liability in whole or in part to any or all of the claimants." Fed. R. Civ. P. 22(a)(1). "Rooted in equity, interpleader is a handy tool to protect a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund." *Blakstad*, 2020 WL 7398755, at *2 (quoting *Washington Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993)).

5

Courts assessing interpleader actions proceed in two steps. "In the first step, a court must determine whether the interpleader action is appropriate, and, if it finds that the action is appropriate, the plaintiff will be discharged from liability." *Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 102 (E.D.N.Y. 2013) (citing *New York Life Ins. Co. v. Conn. Dev. Authority,* 700 F.2d 91, 95 (2d Cir. 1983)); *see also Madison Stock Transfer, Inc.*, 368 F. Supp. 3d at 476 (applying same test for rule interpleader).[1] In the second step, the Court adjudicates the claims among the remaining adverse parties. *See Mitchell*, 966 F. Supp. 2d at 102.

Jackson's Motion requests that the Court permit Jackson to deposit the proceeds of Thomas's annuity contract with the Court and, upon such deposit, discharge Jackson from liability relating to the annuity contract and dismiss Jackson from this action with prejudice. (*See* Mem. at 1.) Neither Maria nor Peter opposes the Motion. As such, the Motion requires this Court only to perform the first step of the interpleader analysis required under Rule 22—assessing the appropriateness of the action. (*See id*. at 4.)

A court determines "whether the interpleader action is appropriate by assessing whether the plaintiff has a real and reasonable fear of double liability or vexatious, conflicting claims against the single fund, regardless of the merits of the competing claims." *Madison Stock Transfer, Inc.*, 368 F. Supp. 3d at 476 (citations and quotation marks omitted). "In applying this test, a court need not analyze the merits of the claims because '[t]he stakeholder should not be obliged at its peril to determine which of two claimants has the better claim.'" *Fid. Brokerage*

---

[1] An interpleader brought under Rule 22 is referred to as "rule interpleader" as opposed to "statutory interpleader," which is an interpleader brought under 28 U.S.C. § 1335. *JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*, No. 22-CV-3865 (JPO), 2024 WL 68527, at *2 n.3 (S.D.N.Y. Jan. 5, 2024). "The two types of interpleader serve the same purpose and perform the same function, and differ only in their requirements for subject matter jurisdiction, venue, and service of process." *Id.*

*Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 178 (S.D.N.Y. 2002) (quoting *John Hancock Mutual Life Ins. Co. v. Kraft*, 200 F.2d 952, 954 (2d Cir. 1953)). A plaintiff who meets the requirements of Rule 22 "will be discharged from liability upon its deposit of the relevant funds with the Court." J*PMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*, No. 22-CV-3865 (JPO), 2024 WL 68527, at *7 (S.D.N.Y. Jan. 5, 2024) (assessing interpleader action under both Rule 22 and 28 U.S.C. § 1355); *but see In re TSC Seiber Servs., L.C.*, 771 F.3d 246, 252 (5th Cir. 2014) ("Simply depositing interpleader funds does not automatically mean that the funds have been legally accepted, ownership thereof transferred, and the interpleader relieved of further duty to the court or further obligation to the parties of the dispute.").

Jackson has brought a proper interpleader action and satisfies Rule 22's requirements. Jackson makes no claims to Thomas's IRA annuity contract proceeds and has a real and reasonable fear of double liability resulting from Maria and Peter's competing and conflicting claims to the funds. *See* Mem. at 5.; *Mitchell*, 966 F. Supp. 2d at 103 (finding interpleader relief appropriate where plaintiff was "a neutral party, or stakeholder, that has been confronted with the [d]efendants' conflicting claims to the" contested plan benefits); *Metro. Life Ins. Co. v. Carey*, No. 16CV3814DLISJB, 2017 WL 4351512, at *3 (E.D.N.Y. Sept. 29, 2017) (finding interpleader relief appropriate where plaintiff claims it faces multiple beneficiaries who claim the same sum of money). Because Jackson risks being sued if it disburses the annuity contract proceeds to either Maria or Peter, it is exposed to "double or multiple liability" under the scope of Rule 22 and, as discussed above, has established independent subject matter jurisdiction.

Moreover, Jackson's requested relief—the deposit of Thomas's IRA annuity contract proceeds, including any applicable interest—in this Court's registry is justified. Under Rule 67, deposit of funds into this Court's registry is warranted if "any part of the relief sought is a money

7

judgment or the disposition of a sum of money or the disposition of any other thing capable of delivery" following notice to every other party and delivery of the order permitting deposit to the clerk of court. Fed R. Civ. P. 67; *see also Blakstad*, 2020 WL 7398755, at *3 (granting intervenor's request to deposit funds in the court's registry pursuant to Rule 22); *John v. Sotheby's, Inc.*, 141 F.R.D. 29, 33 (S.D.N.Y. 1992) (finding interpleader relief appropriate and permitting deposit of subject painting with the clerk of the court).

Accordingly, Jackson is permitted to deposit Thomas's IRA annuity proceeds, including any interest, with this Court. Jackson shall be discharged from liability following Jackson's provision to the Clerk of Court a copy of this Order and "its deposit of the relevant funds with the Court" pursuant to Rule 67. *JP Morgan Chase Bank, N.A.*, 2024 WL 68527, at *8 (ordering interpleader plaintiff who met the requirements of Rule 22 to be discharged from liability upon deposit of funds with the Court).

At this time, however, the Court will not dismiss Jackson from the action with prejudice due to the possibility that Jackson's inclusion in the litigation may facilitate discovery or otherwise further the expeditious resolution of the action. *See In re TSC Seiber Servs.*, 771 F.3d at 252 (noting that deposit of funds with the Court does not relieve interpleader "of further duty to the court or further obligation to the parties of the dispute").

Finally, Jackson requests that this Court require any party that receives a disbursement of the contract proceeds to notify Jackson of the amount of the disbursement and provide Jackson's counsel of record in this matter with a completed Form W-9 for tax reporting purposes. Seeing no objection to this request and finding it reasonable, this Court also grants Jackson this requested relief.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Jackson's unopposed Motion for Leave to Deposit Annuity Proceeds with the Court, for Discharge from Liability, and Dismissal. (ECF Nos. 16, 17.) The Court permits Jackson to deposit the proceeds of Thomas's IRA annuity contract, including any interest, with the Clerk of the Court. Jackson shall be discharged from liability after it files a letter with the Court indicating that it has deposited the proceeds. The Court shall require any party that receives a disbursement of the contract proceeds to notify Jackson of the amount of the disbursement and provide Jackson's counsel of record in this matter with a completed Form W-9 for tax reporting purposes. At this time, the Court denies Jackson's request to be dismissed with prejudice from the action.

Dated: Central Islip, New York
February 6, 2024

    /s Nusrat J. Choudhury    
NUSRAT J. CHOUDHURY
United States District Judge
